## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

**JUSTIN KAUFMAN, ESQ., as Personal**
**Representative for the Wrongful Death Estate**
**of LEONARD P. KUEHL, deceased,**

      **Plaintiff,**

      **vs.**                                       **Civ. No. 20cv1051  MV/JFR**

**BLAZIN WINGS, INC., a Minnesota**
**Corporation d/b/a BUFFALO WILD**
**WINGS, ADAM MORALES, and**
**RAEMOND MATKIN,**

      **Defendants.**

### PROPOSED FINDINGS AND RECOMMENDATION TO DENY
### PLAINTIFF'S MOTION TO REMAND

    **THIS MATTER** is before the Court on Plaintiff's Motion to Remand and Memorandum

of Points and Authorities in Support ("Motion to Remand"), filed November 3, 2020.  Docs. 7, 8.

Defendant Blazin Wings, Inc., filed a Response in Opposition on November 17, 2020.  Doc. 13.

Plaintiff filed a Reply on December 1, 2020.  Doc. 15.  On February 19, 2021, United States

District Judge Martha Vázquez referred Plaintiff's Motion to Remand to the undersigned to issue

proposed findings and a recommended disposition.  Doc. 25.  Because the Court finds that

Plaintiff does not state a cause of action against Defendants Morales and Matkin inside or

outside of the pleadings under which they could possibly prevail, the Court recommends that

Plaintiff's Motion to Remand be **DENIED**.

### I.  FACTUAL ALLEGATIONS

    Defendant Blazin Wings, Inc. ("Blazin Wings") owns and operates the Buffalo Wild

Wings located in Las Cruces, New Mexico.  Doc. 1-2 at 2.  Buffalo Wild Wings sells alcohol

under a liquor license issued by the State of New Mexico to Blazin Wings.  Doc. 13-1 at 2.  On

February 22, 2020, Leonard Kuehl ("Mr. Kuehl") went to Buffalo Wild Wings in Las Cruces to watch televised Ultimate Fighting Championship fights. Doc. 1-2 at 4. Mr. Kuehl remained there for a number of hours during which time he consumed alcohol. *Id.* Sometime late in the evening, Plaintiff alleges that Mr. Kuehl was so intoxicated that he was exhibiting difficulties with balance and walking and had urinated on himself. *Id.* Plaintiff states that Defendants Morales and Matkin assisted in calling a taxicab to transport Mr. Kuehl home, but when the taxicab arrived the driver refused to transport Mr. Kuehl because he was too intoxicated and was soaked in urine. *Id.* at 5. Plaintiff states that Defendants Morales and Matkin then called an Uber to transport Mr. Kuehl home. *Id.* However, after doing so, Plaintiff alleges that they left Mr. Kuehl outside the restaurant, alone and unattended, where Mr. Kuehl fell to the ground, hit his head, and suffered massive head trauma. *Id.* Plaintiff states that Buffalo Wild Wings employee Samantha Garza discovered Mr. Kuehl unconscious on the ground, and called 911 at approximately 11:46 p.m. *Id.* Plaintiff states that Mr. Kuehl was taken by ambulance to Mountain View Medical Center, where his blood alcohol content at 1:00 a.m. was .28. *Id.* at 5-6. Plaintiff states that Mr. Kuehl's injuries were such that he required transport to a higher level of care and that Mr. Kuehl received care for three months at various hospitals and acute care inpatient facilities. *Id.* Plaintiff states that Mr. Kuehl died on May 17, 2020, allegedly as a result of the injuries he sustained on February 22, 2020. *Id.*

## II. **PROCEDURAL HISTORY**

Plaintiff filed a Complaint for Wrongful Death in First Judicial District Court, State of New Mexico, County of Santa Fe, on August 27, 2020. Doc. 1-2. Plaintiff's Complaint alleges, *inter alia*, that Defendant Blazin Wings and Defendants Morales and Matkin acted with gross negligence resulting in death when they breached their duty of care to not serve alcohol to an

intoxicated person in violation of N.M.S.A. 1978, § 60-7A-16, and that Defendants are liable for that breach pursuant to the New Mexico Liquor Liability Act, N.M.S.A. 1978, § 41-11-1 ("Dram Shop Act").  Defendant Blazin Wings was served on September 18, 2020.  Doc. 1-7 at 1. Defendant Blazin Wings timely removed the case to this Court on October 9, 2020, based on diversity jurisdiction and the premise that Plaintiff fraudulently joined Defendants Morales and Matkin.  Doc. 1 at 5-7.  Plaintiff responded to this removal by filing the Motion to Remand presently before this Court.  Doc. 8.

### III. <u>LEGAL STANDARD</u>

An action is removable from state court if the federal district court has original jurisdiction over the matter.  28 U.S.C. § 1441(a).  Pursuant to 28 U.S.C. § 1332(a), a federal district court possesses original subject-matter jurisdiction over a case when the parties are diverse in citizenship and the amount in controversy exceeds $75,000.00.  *See Johnson v. Rodrigues*, 226 F.3d 1103, 1107 (10th Cir. 2000).  As the party invoking the Court's jurisdiction in this case, Defendant "bear[s] the burden of establishing that the requirements for the exercise of diversity jurisdiction are present."  *See Martin v. Franklin Capital Corp*., 251 F.3d 1284, 1290 (10th Cir. 2001) *abrogated on other grounds* by *Dart Cherokee Basin Operating Co., LLC v. Owens*, 135 S. Ct. 547 (2014); *see also Montoya v. Chao*, 296 F.3d 952, 955 (10th Cir. 2002) ("The burden of establishing subject-matter jurisdiction is on the party asserting jurisdiction."). There is a presumption against removal jurisdiction.  *See Laughlin v. Kmart Corp*., 50 F.3d 871, 873 (10th Cir. 1995); *see also Okla. Farm Bureau Mut. Ins. Co. v. JSSJ Corp*., 149 F. App'x 775, 778 (10th Cir. 2005) (unpublished) (explaining that "[g]iven the limited scope of federal jurisdiction, there is a presumption against removal, and courts must deny such jurisdiction if not affirmatively apparent on the record.").

# IV.  **ANALYSIS**

Defendant Blazin Wings does not dispute that Defendants Morales and Matkin are New Mexico residents and that, if properly joined, would defeat federal diversity jurisdiction. Instead, Defendant Blazin Wings argues that the Dram Shop Act, the basis of Plaintiff's Complaint, precludes Plaintiff from naming Morales and Matkin as Defendants, and that Plaintiff fraudulently joined them in an attempt to defeat federal diversity jurisdiction.  Alternatively, Defendant Blazin Wings argues that Defendants Morales and Matkin are "nominal" defendants and that Court should not consider them for purposes of determining diversity jurisdiction. Defendant Blazin Wings argues that the Dram Shop Act permits civil claims only against the liquor licensee and provides the sole basis of recovery for claims arising out of the sale and service of alcohol to intoxicated persons.  Defendant Blazin Wings further argues that Defendants Morales and Matkin, although managers involved in the service of alcohol, are included in the "licensee" designation as defined in the Dram Shop Act.  Lastly, Defendant Blazin Wings argues that because the Dram Shop Act is the sole basis of recovery in a civil claim against a licensee for injury or death that was proximately caused by the sale, service or provision of alcoholic beverages, that Plaintiff cannot bring a separate common-law negligence claim against Defendants Morales and Matkin for failing to take reasonable measures to ensure Mr. Kuehl's safety on the premises while he awaited an Uber.

In contrast, Plaintiff contends that the plain language of the Dram Shop Act allows claims against a licensee's agents and servants, and that the Dram Shop Act does not preclude common-law claims against non-licensees.  Plaintiff also contends that legal theories of agency, respondeat superior, joint liability, and vicarious responsibility support separate causes of action against Defendants Morales and Matkin such that they should not be considered nominal

defendants to this action.  Lastly, Plaintiff contends that, in addition to facing valid claims for the over service of alcohol to Mr. Kuehl, a separate injury occurred on the premises as the result of Defendants Morales and Matkin's reckless handling of Mr. Kuehl after he was already in a state of extreme intoxication.

For the reasons discussed below, the Court agrees with Defendant Blazin Wings that Plaintiff's Complaint for Wrongful Death does not allege a cause of action under which his lawsuit against Defendants Morales and Matkin could possibly succeed.

A.     **Law Regarding Fraudulent Joinder**

"In order to invoke diversity jurisdiction, a party must show that complete diversity of citizenship exists between the adverse parties . . . .  Complete diversity is lacking when any of the plaintiffs has the same residency as even a single defendant."  *Dutcher v. Matheson*, 733 F.3d 980, 987 (10th Cir. 2013).  As stated above, while Defendant Blazin Wings does not dispute that Plaintiff and Defendants Morales and Matkin are all citizens of New Mexico, Defendant Blazin Wings contends that the case was properly removed because Plaintiff fraudulently joined Defendants Morales and Matkin in an attempt to defeat diversity jurisdiction.

"To establish fraudulent joinder, the removing party must demonstrate either: (1) actual fraud in the pleading of jurisdictional facts, or (2) inability of the plaintiff to establish a cause of action against the non-diverse party in state court."  *Dutcher*, 733 F.3d at 988.  "The defendant seeking removal bears a heavy burden of proving fraudulent joinder, and all factual and legal issues must be resolved in favor of the plaintiff."  *Id.* (internal citation omitted).

"While a court normally evaluates the propriety of a removal by determining whether the allegations on the fact of the complaint satisfy the jurisdictional requirements, fraudulent joinder claims are assertions that the pleadings are deceptive.  Thus, in cases where fraudulent joinder is

claimed, we have directed courts to 'pierce the pleadings, consider the entire record, and determine the basis of joinder by any means available.'" *Nerad v. AstraZeneca Pharmaceuticals, Inc.,* 203 F. App'x 911, 913 (10th Cir. 2006) (quoting *Dodd v. Fawcett Publ'ns, Inc.*, 329 F.2d 82, 85 (10th Cir. 1964) (citations omitted)). "In so doing, the court must decide whether there is a reasonable basis to believe the plaintiff might succeed in at least one claim against the non-diverse defendant. A 'reasonable basis' means just that: the claim need not be a sure-thing, but it must have a basis in the alleged facts and the applicable law." *Nerad*, 203 F. App'x 913.

**B.     The Dram Shop Act Limits Liability for Violations of the Liquor Control Act to Licensees, Which By Definition Includes a Licensee's Agents and Servants**

Plaintiff first argues, on the one hand, that the plain language of the Dram Shop Act allows civil claims against parties other than the licensee, such as bar managers. Doc. 8 at 10-11. In support, Plaintiff cites language from the Dram Shop Act which states that a "licensee" means "a person licensed under the provisions of the Liquor Control Act ***and the agents or servants of the licensee*.**" *Id.* (citing N.M.S.A. 1978, § 41-11-1(D)(1) (emphasis in original)). Plaintiff asserts that by its plain language, a claim under Section 41-11-1(B)[1] may be brought against the "person licensed" *as well as against* "the agents or servants of the licensee." *Id.* Plaintiff also cites *Lopez v. Maez*, 1982-NMSC-103, 98 N.M. 625, 651 P.2d 1269, to argue that the statutory framework of the Dram Shop Act makes clear that claims against bar managers are not extinguished because the duty of care not to serve alcohol to an intoxicated person applies

---

[1] In 1985, the Legislature amended Section 41-11-1 to recognize a patron cause of action. *Mendoza v. Tamaya Enterprises, Inc.*, 2011-NMSC-030, ¶ 34, 150 N.M. 258, 258 P.3d 1050, 1058. Pursuant to Section 41-11-1(B), a patron who is served alcohol while intoxicated and injured as a result may obtain relief from the "licensee" who served him. *Id.* (citing N.M.S.A. 1978, § 41-11-1(B)). The statutory patron cause of action requires proof beyond simple negligence; the claimant must show that the licensee "acted with gross negligence and reckless disregard for the safety" of the patron. *Id.*

broadly to "any person."  On the other hand, Plaintiff cites *Mendoza v. Tamaya Enterprises, Inc*., 2011-NMSC-030, 150 N.M. 258, 258 P.3d 1050, to argue that the Dram Shop Act did not abolish common law causes of actions for parties injured by non-licensees after serving alcohol to intoxicated persons thereby allowing for common law claims against Defendants Morales and Matkin.

Next, Plaintiff cites a number of cases to argue that the legal theories of agency, respondeat superior, joint liability, and vicarious responsibility allow for claims against both employees and employers, and that Defendants Morales and Matkin, therefore, should not be considered nominal defendants to this action because separate causes of action could be brought against them.

And last, Plaintiff contends that in addition to facing valid claims for the over service of alcohol to Mr. Kuehl, that a separate injury occurred on the premises as the result of Defendants Morales and Matkin's reckless handling of Mr. Kuehl after he was already in a state of extreme intoxication.

The Court will address each argument in turn.

### 1.    Plain Language of the Dram Shop Act

The Court does not agree that the plain language of the Dram Shop Act allows separate civil claims against parties other than the licensee, such as bar managers.  The definition of "licensee" in the Dram Shop Act, as previously cited, *includes* both the person licensed *and* agents and servants of the licensee, *i.e.,* licensee = (person licensed + agents and servants of licensee).  N.M.S.A. 1978, § 41-11-1.D(1).  To be clear, the conjunction used in the definition is "and."  The definition does not define licensees as the person licensed *or* the agents or servants of the licensee, nor does it define licensees as the person licensed *as well as* agents and servants,

as Plaintiff argues.[2]  And while the legislature could have limited or expanded the definition in all manner ways, as Plaintiff asserts, it did not.  Further, New Mexico case law after the Dram Shop Act's enactment underscores the plain meaning of its definition of licensee.  *See Ashbaugh v. Williams*, 1987-NMSC-120, ¶ 5, 106 N.M. 598, 599, 747 P.2d 244, 245 (it is contemplated that the person who seeks and is awarded the license be responsible and accountable for use of the license and liability of the person licensed must now be predicated upon the knowing acts of the licensee, or upon vicarious liability for the knowing acts of agents or servants whose work the licensee has the right to control).

## 2.  **Statutory Framework**

The Court also does not agree that the statutory framework of the Dram Shop Act makes clear that separate claims against bar managers for a breach of duty not to serve alcohol to intoxicated persons are not extinguished.  Early common law in New Mexico did not permit an action against a liquor vendor for injuries to a patron or a third party which were caused by the acts of the intoxicated person resulting from the vendor's illegal sale of intoxicating liquor.  But in light of an increased frequency of accidents involving drunk drivers, the New Mexico Supreme Court held that the consequences of serving liquor to an intoxicated person whom the server knows or could have known is driving a car was reasonably foreseeable and that a person who negligently creates a dangerous condition cannot escape liability for the natural and probable consequences thereof.[3]  *Lopez*, 1982-NMSC-103, ¶ 16, 98 N.M. at 632, 651 P.2d at 1276.  As such, in the absence of legislative action, and looking to other courts in which common

---

[2] It is not lost on the Court that Plaintiff argues for the plain meaning of the Dram Shop Act's definition of licensee while also attempting to change the language used in the definition.

[3] *See* fn. 1 *supra.*

law rules had been changed to impose liability on tavernkeepers, the New Mexico Supreme

Court held that (1) a tavernkeeper owed a duty of care to the injured third person founded upon a

liquor regulation that made it unlawful to sell or serve alcohol to an intoxicated person; and (2)

the sale or service of alcohol to the intoxicated patron could constitute a proximate cause of the

third person's injuries. *Lopez*, 1982-NMSC-103, ¶¶ 10-16, 98 N.M. at 630-32, 651 at 1274-76;

*see also Trujillo v. Trujillo*, 1086-NMCA-052, ¶ 9, 104 N.M. 379, 380, 721 P.2d 1310, 1311.

    In *Lopez,* the court noted that the statute providing a duty not to serve alcohol, NMSA

1978, Section 60–10–27 (repealed 1981), "[did] not define or qualify the type of person who

sells, serves or gives any alcoholic liquor." *Lopez,* 1982-NMSC-103, ¶ 13, 98 N.M. at 631, 651

P.2d at 1275.  Section 60–10–27 was repealed by NMSA 1978, Section 60–7A–16 (1981) (as

amended through 1993), the version currently in force.  Section 60–7A–16 delineates a duty not

to serve alcohol to intoxicated individuals, and akin to its predecessor, it is a broadly applicable

duty, which does not limit or qualify the person who serves the liquor. Specifically, Section 60–

7A–16 provides:

> It is a violation of the Liquor Control Act ... for a *person* to sell or serve alcoholic
> beverages to or to procure or aid in the procurement of alcoholic beverages for an
> intoxicated person if the person selling, serving, procuring or aiding in
> procurement, knows or has reason to know that he is selling, serving, procuring or
> aiding in procurement of alcoholic beverages for a person that is intoxicated.

(Emphasis added.) Thus, the common law action was premised upon a broad duty, applicable to

any "*person* " who sold or served alcohol.

    In 1983, however, the Legislature enacted Section 41–11–1, which provides a statutory

cause of action applicable to a tavernkeeper who is licensed to serve liquor under New Mexico

law.  *See* 1983 N.M. Laws, ch. 328, § 1(A), (C); § 41–11–1(A), (D)(1) (version in force).  The

enactment of the Dram Shop Statute in 1983 "did not create or abolish a cause of action; instead

it narrowed the liability of tavernkeepers[.]" *Baxter v. Noce*, 1988-NMSC-024, ¶ 8, 107 N.M. 48, 50, 752 P.2d 240, 242.  Since the statute's enactment, "all tort actions against tavernkeepers for the sale or service of alcoholic beverages [are] governed by the dramshop act." *Richardson v. Carnegie Library Restaurant, Inc.*, 107 N.M. 688, 703, 763 P.2d 1153, 1168 (N.M.,1988), *overruled on other grds. by Trujillo v. City of Albuquerque,* 125 N.M. 721, 965 P.2d 305 (1998); *see also Mendoza*, 2011-NMSC-030, ¶ 20, 150 N.M. 258, 258 P.3d at 1055-56  (the New Mexico legislature made Section 41–11–1 the exclusive remedy for breach of Section 60-7A–16 by a licensee) (citing N.M.S.A., § 41-11-1(H) ("No person may seek relief in a civil claim against a licensee or a social host for injury or death or damage to property which was proximately caused by the sale, service or provision of alcoholic beverages except as provided in this section."))).

Thus, while the *Lopez* court and the legislature acknowledged that the duty of care broadly applies to "any person" who sells alcohol to an intoxicated person, Plaintiff's argument ignores that the specific breach of duty at issue in *Lopez*, as it is here, and as was addressed by the legislature in the Dram Shop Act, was not by just "any person" but by a liquor licensee. Moreover, the *Lopez* court and the New Mexico legislature were not focused on broad civil liability, but narrowly focused on imposing liability on liquor licensees for their breach of duty not to sell alcohol to intoxicated persons.  *See Baxter*, 1988-NMSC-024, ¶ 14, 107 N.M. at 51-52, 752 P.2d at 243-244 (explaining that "[d]ramshop liability in New Mexico initially was judicially established, *see Lopez*, 98 N.M. at 628, 651 P.2d at 1272, and in enacting Section 41-11-1, the legislature did not overturn that judicially-created liability, but merely limited its scope."). In doing so, the judicially-established dram shop liability and the later statutorily-established dram shop liability supported the court's and the legislature's shared intention to put

greater controls on persons involved in the liquor industry, *i.e.,* liquor licensees. *See Williams v. Ashbaugh*, 1986-NMCA-073, ¶ 13, 120 N.M. 731, 733, 906 P.2d 263, 265, *aff'd*, 1987-NMSC-120, ¶ 13, 106 N.M. 598, 747 P.2d 244 (stating that by adopting this policy of licensee liability and accountability the legislature created a partial solution to alcohol-related accidents and fatalities by putting greater controls on all persons involved in the liquor industry).  The *Williams* court also noted that "[s]elling liquor is a privilege, not a right," and that privilege may be curtailed to promote a permissible legislative purpose.  *Id.* (citing *Nelson v. Naranjo,* 1964-NMSC-209, 74 N.M. 502, 395 P.2d 228; *Yarbrough v. Montoya,* 1950-NMSC-006, 54 N.M. 91, 214 P.2d 769).

Here, the breach of duty at issue is by a liquor licensee, Blazin Wings, which by definition includes its agents and servants, Defendants Morales and Matkin.  N.M.S.A. 1978, § 41-11-1(D)(1).  Further, the Dram Shop Act is the exclusive remedy for that breach of duty.  N.M.S.A. 1978, § 41-11-1(H).  Thus, given the common-law and legislative histories of dram shop liability in New Mexico, there is no way to manipulate the statutory framework of the Dram Shop Act to get the result Plaintiff wants, *i.e.,* that separate claims against bar managers for a breach of duty not to serve alcohol to intoxicated persons are not extinguished.

### 3.     *Mendoza* **and Common Law Causes of Action**

Plaintiff's reliance on *Mendoza* to allow common law causes of action against Defendants Morales and Matkin is misplaced.  In *Mendoza*, the issue for our purposes here was whether intoxicated patrons and third parties could bring a common law cause of action against a tribal entity that was not licensed pursuant to the New Mexico's Liquor Control Act, but instead licensed by the tribe.[4]  *Mendoza*, 2011-NMSC-030, ¶¶ 16-42, 258 P.3d at 1055-60.  The

---

[4] The court separately addressed that the Tribal-State Class III Gaming Compact permitted it to exercise jurisdiction over claims by injured casino visitors.  *Mendoza*, 2011-NMSC-020, ¶¶ 12-15, 258 P.3d at 1054-55.

New Mexico Supreme Court held that because the Dram Shop Act explicitly limited its scope to licensees who are licensed pursuant to the Liquor Control Act, it only supplanted the common law cause of action against those licensees. *Id.* (citing *Baxter*, 1988-NMSC-024, ¶ 8 , 107 N.M. at 50, 752 P.2d at 242). As such, the court held that the Dram Shop Act did not change the common law's recognition of third-party claims against non-licensees. *Id.* The court, therefore, held that even though the tribal entity was not a "licensee" as defined by the Dram Shop Act, respondents nonetheless could pursue common law third-party and patron claims against a tavernkeeper licensed by the tribe. *Id.*

Here, however, the court's rationale in *Mendoza* does not apply because Defendants Morales and Matkin, as agents and servants of Blazin Wings, are included in the Dram Shop Act's definition of licensee. As such, Plaintiff's cause of action falls within the scope of the Dram Shop Act, which is the exclusive remedy for the breach at issue. *Mendoza,* 2011-NMSC-030, ¶¶ 19-20, 150 N.M. 258, 258 P.3d at 1055–56; *see also Chavez v. Desert Eagle Distrib. Co. of N.M.,* 2007-NMCA-018, ¶ 31, 141 N.M. 116, 126, 151 P.3d 77, 87, *overruled on other grounds by Rodriguez v. Del Sol Shopping Ctr. Assocs., L.P.,* 2014-NMSC-014, ¶ 31, 326 P.3d 465 ("Under New Mexico law, tort liability for the sale or service of alcohol is limited to those instances in which a Liquor Control Act licensee acts with gross negligence or reckless disregard in serving a person who is intoxicated" and Section 41-11-1(H) further provides that "no person may seek relief in a civil claim against a licensee . . . for the injury or death . . . which was proximately caused by the sale, service or provision of alcoholic beverages except as provided in this section."). For this reason, Plaintiff's argument that *Mendoza* supports bringing common

law claims against Defendants Morales and Matkin for selling alcohol to an intoxicated person necessarily fails.

    **4.**      **<u>Agency Law, Respondeat Superior, Joint Liability and Vicarious Responsibility</u>**

        Plaintiff argues that as employees of Blazin Wings, Defendants Morales and Matkin can be held liable for their conduct, along with that of their employer, under various other legal theories such as agency law, respondeat superior, joint liability, and vicarious responsibility and that they, therefore, are not nominal defendants and that causes of action could be brought against them.[5]  Plaintiff first cites *Haafke v. Mitchell,* 347 N.W.2d 381 (Iowa 1987), *overruled on other grounds by Gail v. Clark*, 410 N.W.2d 662 (Iowa 1987), for the premise that the general rules of agency law make clear that an agent is liable for acts of his own negligence even though done in the course of his employment and even if done at the express directions of his employer. *Id.* (citing *Restatement (Second) of Agency* § 343 (1958)).   Significantly, however, the court in *Haafke* noted that the general rules of agency apply *unless* "a different rule must apply because it is a liquor case."  *Haafke,* 347 N.W.2d at 385.   Thus, the *Haafke* court, although permitting common-law liability claims against the tavern employees who were not included in Iowa's dram shop act's definition of licensees and permittees, nonetheless held that the exclusive remedy as to the liquor licensees and permittees was Iowa's dram shop act.  *Haafke*, 347 N.W.2d at 385, 388.  Because the case here is a "liquor case," and because Defendants Morales and Matkin, as agents and servants of the licensee, are included in the definition of licensee as provided within the Dram Shop Act, Plaintiff has failed to demonstrate how the general rules of

---

[5] *See Lenon v. St. Paul Mercury Ins. Co.,* 136 F.3d 1365 (10th Cir. 1998) ("[I]t is well-settled that Rule 21 invests district courts with authority to allow a dispensable nondiverse party to be dropped at any time [to preserve diversity jurisdiction], even after judgment has been rendered.").

agency support a cause of action against Defendants Morales and Matkin or support that they are not nominal defendants.

Plaintiff next cites *Baker v. Hedstrom*, 2013-NMSC-043, 309 P.3d 1047, to argue that employers can be found liable for negligence, along with their employees, under a theory of respondeat superior.  In *Baker*, the issue was whether a physician's professional corporation could be considered a health care provider within the meaning of the Medical Malpractice Act and, if so, whether the professional corporation was entitled to the Medical Malpractice Act's benefits if sued under the doctrine of respondeat superior.  *Id.*  The court applied principles of statutory construction to answer both in the affirmative.  *Baker*, 2013-NMSC-043, ¶ 40, 309 P.3d at 1058.  *Baker*, therefore, is primarily focused on statutory construction and interpretation. Here, however, the statutes at issues, the Liquor Control Act and the Dram Shop Act, are not doubtful or ambiguous as to where liability lies for the breach of duty not to sell alcohol to an intoxicated person.  To the contrary, the Liquor Control Act makes it a violation for a person to sell or serve alcoholic beverages to an intoxicated person.  N.M.S.A. 1978, § 60-7A-16.  The Liquor Control Act additionally holds the person to whom a license is issued is *fully* liable and accountable for the use of the license.  N.M.S.A. 1978, § 60-3A-2(B); *see also Williams*, 1986-NMCA-073, ¶¶ 10, 12, 120 N.M. at 733, 906 P.2d at 265 ("part of the purpose of the 1981 Liquor Control Act was to tighten this state's liquor control laws" and "[t]he policy set forth in Section 30-3A-2(B) imposes liability on liquor licensees and makes no exception for those who are 'merely' lessors."); *Ashbaugh*, 1987-NMSC-120, ¶ 8, 106 N.M. at 599, 747 P.2d at 245 (the person who seeks and is awarded the license is responsible and accountable for use of the license); *Est. of Gutierrez ex rel. Jaramillo v. Meteor Monument, LLC*, 2012-NMSC-004, ¶ 8, 274 P.3d 97, 101 (the identity of the server who actually sold or served alcohol to a patron is not

14

a prerequisite to proving dram shop liability).  The Dram Shop Act explicitly provides that the exclusive remedy for breach of duty of care not to sell alcohol to intoxicated persons by a licensee is against the licensee, which by definition includes its agents and servants.  N.M.S.A. 1978, § 41-11-1(D)(1) and (H).  Moreover, Plaintiff's reliance on *Baker* to argue that the legal theory of respondeat superior supports separate causes of action against Defendants Morales and Matkin essentially turns that theory on its head.  *See* Restatement (Third) of Agency: Respondeat Superior § 2.04 (2006) ("An employer is subject to liability for torts committed by employees while acting within the scope of their employment.").  Here, Defendant Blazin Wing's vicarious liability for the negligence of its employees for breaching the duty not to serve alcohol to an intoxicated person is already settled.

Last, Plaintiff cites *Valdez v. R-Way, LLC*, 2010-NMCA-068, 148 N.M. 477, 237 P.3d 1289, and *Ford v. N.M. Dept. of Pub. Safety*, 1994-NMCA-154, 119 N.M. 405, 891 P.2d 546, to argue that because an employer and an employee can be jointly liable or that an employer can be vicariously responsible for the acts of an employee, Defendants Morales and Matkin are not nominal defendants and a cause of action could be brought against them.  At issue in *Valdez*, a car accident case, was whether plaintiff's settlement with the employee driver destroyed plaintiff's claim against the employee driver's employer.  *Valdez,* 2010-NMCA-068, 148 N.M. 477, 237 P.3d 1289.  The court held that plaintiff's release of the employee driver released the employer on the ground that "where an employer's liability arises only by virtue of the doctrine of respondeat superior, and not through any independent negligence of the employer, the employer is not a true joint tortfeasor."  *Valdez*, 2010-NMCA-068, ¶ 1, 237 P.2d at 1290.  At issue in *Ford* was whether a plaintiff who had an adverse judgment in a federal lawsuit could relitigate his claim against the employer defendant on a theory of vicarious responsibility.  *Ford*,

1994-NMCA-154, at ¶ 8, 891 P.2d at 549.  The court determined that the employer's liability

was based solely on vicarious responsibility for the acts of the federal defendants, and that the

earlier federal judgment involving those defendants precluded suit against the federal defendants

for those acts, thereby precluding a claim against the employer defendant.  *Ford*, 1994-NMCA-

154, at ¶ 12, 891 P.3d at 556.  Notably, these cases focus in large part on when an employer is

either fully or partially liable, or is released altogether from liability, for the acts of its

employees.  But as previously discussed herein, the facts and legal remedies available in this

case already make clear where *full* liability and accountability lies when the duty not to sell

alcohol to intoxicated persons is breached by a licensee.  *See* N.M.S.A. 1978, §§ 60-3A-2(B), 60-

7A-16 and 41-11-1(D)(1) and (H).  Thus, applying legal theories of joint liability or vicarious

responsibility are not necessary to apportion liability.  Plaintiff, therefore, has failed to

demonstrate that Defendants Morales and Matkin are not nominal defendants or that causes of

actions could be brought against them under these legal theories.

### 5.   Separate Injury After the Over-Service of Alcohol

Finally, Plaintiff argues that the Complaint has asserted a viable claim against Defendants

Morales and Matkin for alleged tortious conduct that occurred *after* the over service of alcohol.

Plaintiff argues that a separate injury occurred on the premises where the alcohol was served as

the result of Defendants Morales and Matkin's reckless handling of Mr. Kuehl after he was

already in a state of extreme intoxication.  Doc. 8 at 20-22.  Citing *Est. of Gutierrez,* Plaintiff

contends that New Mexico case law demonstrates that the Dram Shop Act "does not restrict the

types of claims or conduct upon which recovery may be based," and that Defendant Morales and

Matkin cannot be insulated from their tortious conduct that occurred after the over-service of

alcohol to Mr. Kuehl.  *Id.*

In *Est. of Gutierrez*, the estate of a motorcycle rider who was killed when a vehicle driven by an intoxicated employee of liquor licensee crashed into the motorcycle rider brought a wrongful death action against the intoxicated employee and licensee, alleging claims for violation of Dram Shop Act, negligent supervision, vicarious liability, and punitive damages. *Est. of Gutierrez*, 2012-NMSC-004, 274 P.3d 97.  Plaintiff argues that *Est. of Gutierrez* demonstrates that the Dram Shop Act does not restrict the types of claims or conduct upon which recovery may be based.  Doc. 8 at 20-22.  For example, Plaintiff notes that the plaintiff in *Est. of Gutierrez* prevailed on a negligent supervision cause of action against the intoxicated employee's employer.  *Id*.

While the Court agrees that the Dram Shop Act does not abolish claims, *Baxter*, 1988-NMSC-024, ¶ 8, 107 N.M. at 50, 752 P.2d at 242, Plaintiff has failed to state the common-law cause of action he is pleading related to Defendants Morales and Matkin's "reckless handling" of Mr. Kuehl and leaving him unattended outside the restaurant.  Moreover, Plaintiff has failed to demonstrate that he would have a cause of action based on a general theory of negligence which could arise in a context completely unrelated to alcohol.  For instance, Plaintiff has not argued that the act of leaving Mr. Kuehl unattended was an independent intervening cause thereby allowing a separate cause of action which sounds in negligence, wholly apart from the alleged Dram Shop Act violation.  *See generally Lopez*, 1982-NMCA-083, ¶ 15, 98 N.M. at 632, 651 P.2d at 1276 (explaining that an independent intervening cause which will prevent a recovery of the act or omission of a wrongdoer must be a cause which interrupts the natural sequence of events, turns aside their cause, prevents the natural and probably results of the original act or omission, and produces a different result, which could not have been reasonably foreseen) (citations omitted)).  Instead, Plaintiff has pled that Mr. Kuehl's injuries were proximately

caused by Defendants' violation of their duty not to serve alcohol to an intoxicated person. *Id.*
(discussing proximate cause as that which in a natural and continuous sequence unbroken by any
new independent cause produces the injury and without which injury would not have occurred).
Because Plaintiff's allegations arise out of and are dependent upon the sale and service of
alcohol which caused Mr. Kuehl's intoxication, Plaintiff's alleged cause of action related to
Defendants Morales and Matkin's recklessly handling of Mr. Kuehl by leaving him unattended is
subsumed within the scope of the Dram Shop Act. *See* N.M.S.A. 1978, § 41-11-1(H); *see also
generally Colony Ins. Co. v. Events Plus, Inc.*, 585 F. Supp. 2d 1148, 1152 (D. Ariz. 2008)
(discussing that when negligence claims are so inextricably intertwined with the negligent
provision of alcohol they are subsumed within the scope of liquor liability).

    The New Mexico Supreme Court addressed a similar issue in *Delfino v. Griffin*, 2011-
NMSC-015, 150 N.M. 97, 257 P.3d 917. *Delfino* involved the liability of social hosts who were
found liable under the Dram Shop Act. *Id.* The plaintiff in that case filed a wrongful death suit
against pharmaceutical representatives and their employers, *inter alia*, alleging common law
negligence against the representatives for purchasing alcohol for the intoxicated driver and
permitting her to drive, recklessness for the same actions under the Dram Shop Act, and against
the representatives' employers under respondeat superior. *Id.* The theories underlying the
claims asserting liability against the pharmaceutical defendants were that they owed a common-
law duty to prevent the intoxicated third party from driving; that pharmaceutical defendants were
aiding and abetting the intoxicated third party in committing a tortious action under Restatement
(Second) of Torts Section 876(B) (1977); and that pharmaceutical defendants were social hosts
who acted recklessly and thus were liable under the Dram Shop Act. 2011-NMSC-015, ¶ 7, 257
P.3d at 921. The district court had granted the pharmaceutical defendants' motion to dismiss for

failure to state a claim finding that they were under no legal duty either under the state's common law or the Dram Shop Act.  2011-NMSC-015, at ¶ 2, 257 P.3d at 920.  On appeal, the New Mexico Supreme Court, having determined that the pharmaceutical defendants met the definition of social hosts under the Dram Shop Act, reversed the district court's order and held that plaintiff had stated a claim against the pharmaceutical defendants as social hosts under the Dram Shop Act.  2011-NMSC-015, at ¶ 36, 257 P.3d at 928-29.

Significantly for our purposes here, the New Mexico Supreme Court further held in *Delfino* that they need not reach plaintiff's argument that the pharmaceutical defendants owed plaintiff a common-law tort duty or that a duty was stated under the Restatement, "because the Liquor Liability Act is the exclusive remedy for injuries caused by social hosts."  2011-NMSC-015, ¶ 37, 257 P.3d at 929 (citing Section 41-11-1(H) and *Chavez*, 2007-NMCA-018, ¶ 31, 141 NM 116, 151 P.3d 77 (discussing the exclusivity of the Liquor Liability Act when it applies)).  In other words, because the Dram Shop Act was the exclusive remedy for the social hosts' violation of their duty not to serve alcohol to an intoxicated person, the court did not reach plaintiff's claim that the pharmaceutical defendants owed plaintiff a common law duty to prevent the intoxicated third party from driving or that the pharmaceutical defendants were aiding and abetting the intoxicated third party in committing a tortious action.  *Id.*; *see also Herrera v. Quality Pontiac*, 2003-NMSC-018, ¶ 9, 134 N.M. 43, 73 P.3d 181, (to determine whether the defendant's obligation is one to which the law will give recognition and effect, New Mexico courts consider legal precedent, statutes, and other principles of law).

In sum, Plaintiff alleges that Mr. Kuehl's fall was proximately caused by the over service of alcohol, *i.e.,* Defendants flagrantly disregarded their legal obligations as a licensed purveyor of alcohol and were grossly negligent with respect to the safety of their business invitee.  Doc. 1-

2 at 2.  As such, the Dram Shop Act is the exclusive remedy for the injuries Mr. Kuehl sustained. N.M.S.A., § 41-11-1(B) and (H); *see also Mendoza*, 2011-NMSC-030, ¶ 34, 150 N.M. 258, 258 P.3d at 1058 ("[t]his statute articulates a policy in favor of holding the tavernkeeper responsible for the patron's injuries, where it is clear that the tavernkeeper's actions were reckless); *Lopez*, 1982-NMCA-083, ¶¶ 15, 16, 98 N.M. at 631-32, 651 P.2d at 1275.  Plaintiff's claim that Defendants Morales and Matkin owed Mr. Kuehl a separate common law duty *after* the over service of alcohol to prevent him from falling while waiting for the Uber outside of the restaurant, therefore, is contrary to the exclusivity provisions of the Dram Shop Act and Plaintiff cannot state a claim upon which relief can be granted.

## V.  <u>RECOMMENDATION</u>

For all of the foregoing reasons, the Court finds that Defendant Blazin Wings has demonstrated the inability of Plaintiff to establish a cause of action against Defendants Morales and Matkin and that they have been fraudulently joined.  *Dutcher*, 733 F.3d at 988.  The Court, therefore, recommends that Plaintiff's Motion to Remand be **DENIED**.

---

**THE PARTIES ARE NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1).  **A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition.  If no objections are filed, no appellate review will be allowed.**

---

**JOHN F. ROBBENHAAR**
**United States Magistrate**