IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

JUSTIN KAUFMAN, ESQ., as Personal
Representative for the Wrongful Death Estate
of LEONARD P. KUEHL, deceased,

    **Plaintiff,**

    vs.                                                                                    Civ. No. 20cv1051  MV/JFR

BLAZIN WINGS, INC., a Minnesota
Corporation d/b/a BUFFALO WILD
WINGS, ADAM MORALES, and
RAEMOND MATKIN,

    **Defendants.**

## AMENDED PROPOSED FINDINGS AND RECOMMENDATION REGARDING PLAINTIFF'S MOTION TO REMAND

**THIS MATTER** is before the Court on Plaintiff's Motion to Remand and Memorandum of Points and Authorities in Support ("Motion to Remand"), filed November 3, 2020. Docs. 7, 8. Defendant Blazin Wings, Inc., filed a Response in Opposition on November 17, 2020. Doc. 13. Plaintiff filed a Reply on December 1, 2020. Doc. 15. On February 19, 2021, United States District Judge Martha Vázquez referred Plaintiff's Motion to Remand to the undersigned to issue proposed findings and a recommended disposition. Doc. 25.

On March 22, 2021, the undersigned entered Proposed Findings and Recommended Disposition ("PFRD") finding there was no possibility that Plaintiff could assert a cause of action against Defendants Morales and Matkin inside or outside of the pleadings under which they could possibly prevail and recommending that Plaintiff's Motion to Remand be denied. Doc. 28. On April 5, 2021, Plaintiff timely filed Plaintiff's Objections to Magistrate's Proposed Findings and Recommended Disposition Regarding Plaintiff's Motion to Remand ("Objections").

Doc. 29.  Defendant Blazin Wings, Inc., filed a Response in Opposition to Plaintiff's Objections on April 19, 2021.  Doc. 30.  On April 28, 2021, Plaintiff filed a Motion for Leave to Submit Reply in Support of Objections to Magistrate's Proposed Findings and Recommended Disposition, filed April 28, 2021.  Doc. 31.  Defendant Blazin Wings, Inc., filed a Response in Opposition on April 12, 2021.  Doc. 33.

There being no final judgment in this matter, the undersigned, acting under the Court's inherent authority to reconsider its previous rulings and on Order of Reference from United States District Judge Martha Vázquez to conduct proceedings, *see* 28 U.S.C. § 636, now recommends, for the reasons stated herein, that Plaintiff's Motion to Remand be **GRANTED.** *See generally Dietz v. Bouldin*, 136 S.Ct. 1885, 1891-92 (2016).  The Court further recommends that Plaintiff's Motion for Leave to Submit Reply in Support of Objections to Magistrate's Proposed Findings and Recommended Disposition be **DENIED AS MOOT**.

## I.  FACTUAL ALLEGATIONS

Defendant Blazin Wings, Inc. ("Blazin Wings") owns and operates the Buffalo Wild Wings located in Las Cruces, New Mexico.  Doc. 1-2 at 2.  Buffalo Wild Wings sells alcohol under a liquor license issued by the State of New Mexico to Blazin Wings.  Doc. 13-1 at 2.  Defendants Adam Morales and Raemond Matkin are managers at Buffalo Wild Wings and were acting as co-managers on the night of February 22, 2020.  Doc. 1-2 at 2-3.  On February 22, 2020, Leonard Kuehl ("Mr. Kuehl") went to Buffalo Wild Wings in Las Cruces to watch televised Ultimate Fighting Championship fights.  Doc. 1-2 at 4.  Mr. Kuehl remained there for a number of hours during which time he consumed alcohol.  *Id.*  Sometime late in the evening, Plaintiff alleges that Mr. Kuehl was so intoxicated that he was exhibiting difficulties with balance and walking and had urinated on himself.  *Id.*  Plaintiff states that Defendants Morales

and Matkin assisted in calling a taxicab to transport Mr. Kuehl home, but when the taxicab arrived the driver refused to transport Mr. Kuehl because he was too intoxicated and was soaked in urine. *Id.* at 5. Plaintiff states that Defendants Morales and Matkin then called an Uber to transport Mr. Kuehl home. *Id.* However, after doing so, Plaintiff alleges that they left Mr. Kuehl outside the restaurant, alone and unattended, where Mr. Kuehl fell to the ground, hit his head, and suffered massive head trauma. *Id.* Plaintiff states that Buffalo Wild Wings employee Samantha Garza discovered Mr. Kuehl unconscious on the ground, and called 911 at approximately 11:46 p.m. *Id.* Plaintiff states that Mr. Kuehl was taken by ambulance to Mountain View Medical Center, where his blood alcohol content at 1:00 a.m. was .28. *Id.* at 5-6. Plaintiff states that Mr. Kuehl's injuries were such that he required transport to a higher level of care and that Mr. Kuehl received care for three months at various hospitals and acute care inpatient facilities. *Id.* Plaintiff states that Mr. Kuehl died on May 17, 2020, allegedly as a result of the injuries he sustained on February 22, 2020. *Id.*

## II. PROCEDURAL HISTORY

Plaintiff filed a Complaint for Wrongful Death in First Judicial District Court, State of New Mexico, County of Santa Fe, on August 27, 2020. Doc. 1-2. Plaintiff's Complaint alleges claims against Defendant Blazin Wings of (1) gross negligence resulting in death pursuant to N.M.S.A. 1978, § 60-7A-16 (Liquor Control Act *Sale to Intoxicated Persons*) and N.M.S.A. 1978, § 41-11-1 ("Dram Shop Act"); (2) gross negligence *per se* resulting in death pursuant to N.M. Adm. Code 15.10.51.11 (*Sales to Intoxicated Persons*); and (3) negligence and/or gross negligence – premises liability. Doc. 1-2 at 6-8, 10-12, 12-14. Whether Defendant Blazin Wings is a properly named defendant in this action is not at issue.

Plaintiff's Complaint also alleges a claim of gross negligence resulting in death against Defendants Morales and Matkin. *Id.* at 8-10. This cause of action states that "[a]s licensed alcohol servers and as managers of Buffalo Wild Wings on the night of February 22, 2020, Defendants Morales and Matkin owed a duty of care to Mr. Kuehl, their patron and business invitee." *Id.* at 8. Plaintiff alleges that Defendants Morales and Matkin breached their duty of care by (1) serving or allowing the over service of alcohol after Mr. Kuehl was severely and obviously intoxicated; (2) failing to supervise the service of alcohol at Buffalo Wild Wings; (3) allowing Mr. Kuehl to be left standing alone and unattended on the concrete walkway where he was highly susceptible to falling due to his extreme intoxication; and (4) failing to take reasonable measures to ensure Mr. Kuehl's safety on the premises given his extreme intoxication. *Id.* at 9.

Defendant Blazin Wings timely removed the case to this Court on October 9, 2020, based on diversity jurisdiction and the premise that Plaintiff fraudulently joined Defendants Morales and Matkin. Doc. 1 at 5-7. Plaintiff responded to this removal by filing the Motion to Remand presently before this Court. Doc. 8.

### III. LEGAL STANDARD

An action is removable from state court if the federal district court has original jurisdiction over the matter. 28 U.S.C. § 1441(a). Pursuant to 28 U.S.C. § 1332(a), a federal district court possesses original subject-matter jurisdiction over a case when the parties are diverse in citizenship and the amount in controversy exceeds $75,000.00. *See Johnson v. Rodrigues*, 226 F.3d 1103, 1107 (10th Cir. 2000). As the party invoking the Court's jurisdiction in this case, Defendant "bear[s] the burden of establishing that the requirements for the exercise of diversity jurisdiction are present." *See Martin v. Franklin Capital Corp.*, 251 F.3d 1284, 1290

(10th Cir. 2001) *abrogated on other grounds* by *Dart Cherokee Basin Operating Co., LLC v. Owens*, 135 S. Ct. 547 (2014); *see also Montoya v. Chao*, 296 F.3d 952, 955 (10th Cir. 2002) ("The burden of establishing subject-matter jurisdiction is on the party asserting jurisdiction."). There is a presumption against removal jurisdiction. *See Laughlin v. Kmart Corp.*, 50 F.3d 871, 873 (10th Cir. 1995); *see also Okla. Farm Bureau Mut. Ins. Co. v. JSSJ Corp.*, 149 F. App'x 775, 778 (10th Cir. 2005) (unpublished) (explaining that "[g]iven the limited scope of federal jurisdiction, there is a presumption against removal, and courts must deny such jurisdiction if not affirmatively apparent on the record.").

### IV. <u>ANALYSIS</u>

In its Notice of Removal, Defendant Blazin Wings does not dispute that Defendants Morales and Matkin are New Mexico residents and that, if properly joined, would defeat federal diversity jurisdiction. Instead, Defendant Blazin Wings argues that the damages Plaintiff seeks arise out of Defendant Blazin Wing's legal obligations as a "licensed purveyor of alcohol," and that the Dram Shop Act provides the sole basis for recovery for claims arising out of the sale and service of alcohol against "licensees," which by definition includes servers and managers. Doc. 1 at 6. Defendant Blazin Wings further argues that any claim for negligent management or supervision against a "licensee" is not recoverable due to operation of the Dram Shop Act. *Id.* at 6-7. Alternatively, Defendant Blazin Wings argues that Defendants Morales and Matkin are "nominal" defendants and that Court should not consider them for purposes of determining diversity jurisdiction.

In his Motion to Remand, Plaintiff contends that Defendant Blazin Wings has failed to carry its heavy burden of the presumption against removal because they have not conclusively demonstrated that Plaintiff has no possibility of establishing a cause of action against Defendants

5

Morales and Matkin.  Doc. 8 at 6-8.  On the one hand, Plaintiff contends that the plain language of the Dram Shop Act allows claims against a licensee *and* a licensee's agents and servants, and cites case law from other jurisdictions that have declined to insulate employees from civil liability in the face of dram shop statutes.  *Id.* at 9-11, 14-16.  On the other hand, Plaintiff contends that even if the Dram Shop Act does not allow claims against employees of licensees, the statutory framework of the Dram Shop Act does not preclude common-law claims against non-licensees who have improperly served alcohol to an intoxicated person.  *Id.* at 11-14, 19-20.  Plaintiff contends that legal theories of agency, respondeat superior, joint liability, and vicarious responsibility support separate causes of action against Defendants Morales and Matkin such that they should not be considered nominal defendants to this action.  *Id*. at 16-18.  Lastly, Plaintiff contends that, in addition to alleging valid claims for the over service of alcohol to Mr. Kuehl, Plaintiff has alleged that a separate injury occurred on the premises as the result of Defendants Morales and Matkin's reckless handling of Mr. Kuehl after he was already in a state of extreme intoxication.  *Id.* at 20-22.

      A.      **<u>Law Regarding Fraudulent Joinder</u>**

"In order to invoke diversity jurisdiction, a party must show that complete diversity of citizenship exists between the adverse parties . . . .  Complete diversity is lacking when any of the plaintiffs has the same residency as even a single defendant."  *Dutcher v. Matheson*, 733 F.3d 980, 987 (10th Cir. 2013).  As stated above, while Defendant Blazin Wings does not dispute that Plaintiff and Defendants Morales and Matkin are all citizens of New Mexico, Defendant Blazin Wings contends that the case was properly removed because Plaintiff fraudulently joined Defendants Morales and Matkin in an attempt to defeat diversity jurisdiction.

"To establish fraudulent joinder, the removing party must demonstrate either: (1) actual fraud in the pleading of jurisdictional facts, or (2) inability of the plaintiff to establish a cause of action against the non-diverse party in state court." *Dutcher*, 733 F.3d at 988.  "The defendant seeking removal bears a heavy burden of proving fraudulent joinder, and all factual and legal issues must be resolved in favor of the plaintiff." *Id.* (internal citation omitted).

"While a court normally evaluates the propriety of a removal by determining whether the allegations on the fact of the complaint satisfy the jurisdictional requirements, fraudulent joinder claims are assertions that the pleadings are deceptive.  Thus, in cases where fraudulent joinder is claimed, we have directed courts to 'pierce the pleadings, consider the entire record, and determine the basis of joinder by any means available.'" *Nerad v. AstraZeneca Pharmaceuticals, Inc.*, 203 F. App'x 911, 913 (10th Cir. 2006) (quoting *Dodd v. Fawcett Publ'ns, Inc.*, 329 F.2d 82, 85 (10th Cir. 1964) (citations omitted)).  "In so doing, the court must decide whether there is a reasonable basis to believe the plaintiff might succeed in at least one claim against the non-diverse defendant.  A 'reasonable basis' means just that: the claim need not be a sure-thing, but it must have a basis in the alleged facts and the applicable law." *Nerad*, 203 F. App'x 913.

"Merely to traverse the allegations upon which the liability of the resident defendant is rested or to apply the epithet 'fraudulent' to the joinder will not suffice: the showing must be such as compels the conclusion that the joinder is without right and made in bad faith." *Chesapeake & Ohio Ry. Co. v. Cockrell*, 232 U.S. 146, 152, 34 S.Ct. 278, 58 L.Ed. 544 (1914). Accordingly, the defendant arguing fraudulent joinder "must demonstrate that there is no possibility that [plaintiff] would be able to establish a cause of action against [the joined party] in state court." *Montano v. Allstate Indem.*, No. 99-2225, 2000 WL 525592, at *2, 2000 U.S. App.

LEXIS 6852, at * 5 (10th Cir. Apr. 14, 2000) (internal citation and quotation marks omitted) (alternation in original). "This standard is more exacting than that for dismissing a claim under Fed. R. Civ. P. 12(b)(6); indeed, the latter entails the kind of merits determination that, absent fraudulent joinder, should be left to the state court where the action was commenced." *Id.*

      **B.**     <u>**The Definition of Licensee Is Arguably Ambiguous**</u>

Plaintiff first argues that the plain language of the Dram Shop Act allows civil claims against parties other than the licensee, such as bar managers. Doc. 8 at 10-11. In support, Plaintiff cites language from the Dram Shop Act which states that a "licensee" means "a person licensed under the provisions of the Liquor Control Act ***and the agents or servants of the licensee***." *Id.* (citing N.M.S.A. 1978, § 41-11-1(D)(1) (emphasis in original)). Plaintiff asserts that by its plain language, a claim under Section 41-11-1(B) may be brought against the "person licensed" *as well as against* "the agents or servants of the licensee." *Id.*

Defendant Blazin Wings disagrees. It contends that the definition of licensee already *includes* its agents, servants or employees. Doc. 13 at 4-5. Defendant Blazin Wings further contends that the Dram Shop Act was enacted (1) to narrow liability for liquor licensees by creating one cause of action and one set of damages when the provisions of the Act are met; (2) to abolish claims against other individuals;[1] and (3) is the sole basis for recovery for claims

---

[1] Defendant Blazin Wings cites *Ashbaugh v. Williams* for its premise that before the enactment of the Dram Shop Act a cause of action existed against an individual, but that the individual claim was abolished thereafter. Doc. 13 at 5-6. The Court does not agree with this conclusion. In *Ashbaugh*, the question before the New Mexico Supreme Court was the correctness of the Court of Appeals' imposition of vicarious tort liability upon an absent owner-lessor of a liquor license. 1987-NMSC-120, ¶ 2, 106 N.M. 598, 747 P.2d 244. Plaintiffs asserted liability of the licensee based on the provisions of the Liquor Control Act. *Id.* The court explained, *inter alia,* that the Dram Shop Act was inapplicable because it was enacted after the incident at issue. 1987-NMSC-120, ¶¶ 5-6, 106 N.M. at 599, 747 P.2d at 245. The Court also explained, however, that if the Dram Shop Act had been enacted at the time of the incident, the absent owner-lessor of the license would not be directly or vicariously liable because liability of the person licensed had to be predicated upon the knowing acts of the licensee, or upon vicarious liability for the knowing acts of agents or servants whose work the licensee has the right to control. *Id.* In this case, the absent owner-lessor of the license did not employ the lessees. *Id.* Notably, the Court did not address whether finding the absent owner-lessor of the liquor license fully liable and accountable for the use of the license extinguished the claims against the lessees who

arising out of the sale and service of alcohol against a licensee. *Id.* at 4-7. Defendant Blazin Wings asserts that to accept Plaintiff's interpretation would create an almost endless number of eligible defendants. *Id.*

By way of background, early common law in New Mexico did not permit an action against a liquor vendor for injuries resulting from the vendor's illegal sale of intoxicating liquor.[2] In *Lopez v. Maez*, the New Mexico Supreme Court held that (1) a *tavernkeeper* owed a duty of care to the injured third person founded upon a liquor regulation that made it unlawful to sell or serve alcohol to an intoxicated person; and (2) the sale or service of alcohol to the intoxicated patron could constitute a proximate cause of the third person's injuries. 1982-NMSC-103, ¶¶ 4-5, 98 N.M. 625, 628, 651 P.2d 1269, 1272 (emphasis added).

In 1983, the Legislature enacted Section 41–11–1, which provides a statutory cause of action applicable to a tavernkeeper who is licensed to serve liquor under New Mexico law. *See* 1983 N.M. Laws, ch. 328, § 1(A), (C); § 41–11–1(A), (D)(1) (version in force). The Legislature made Section 41-11-1 the exclusive remedy for breach of Section 60-7A-16 by a licensee. *See* § 41-11-1(H) ("No person may seek relief in a civil claim against a licensee or a social host for injury or death or damage to property which was proximately caused by the sale, service or provision of alcoholic beverages except as provided in this section."). The enactment of the Dram Shop Statute in 1983 "did not create or abolish a cause of action; instead it narrowed the liability of tavernkeepers, exempted social hosts from liability, and set out the elements which

---

were also named defendants. In any event, the Court fails to see how this case stands for the legal premise Defendant Blazin Wings asserts.

[2] "At common law, recovery was allowed against a person who furnished intoxicating liquor to a consumer that resulted in his or her death. Under this circumstance, it had to be shown that the server of the liquor served the consumer with complete and wanton disregard of the consumer's welfare and also that the consumer was in no condition to observe ordinary care for self-preservation. 12 Am. Jur. Trials *Dram Shop Litigation* § 3 (1966)." *Lopez v. Maez*, 1982-NMSC-103, ¶ 5, n. 2, 98 N.M. at 628, n. 2, 651 P.2d at 1272, n. 2.

would constitute a breach of the duty established in *Lopez*." *Baxter v. Noce*, 1988-NMSC-024, ¶ 8, 107 N.M. 48, 50, 752 P.2d 240, 242. Since the statute's enactment, "all tort actions against tavernkeepers for the sale or service of alcoholic beverages [are] governed by the dramshop act." *Richardson v. Carnegie Library Restaurant, Inc.*, 107 N.M. 688, 703, 763 P.2d 1153, 1168 (N.M.,1988), *overruled on other grds. by Trujillo v. City of Albuquerque,* 125 N.M. 721, 965 P.2d 305 (1998); *see also Mendoza v. Tamaya Enterprises, Inc.*, 2011-NMSC-030, ¶ 20, 150 N.M. 258, 258 P.3d at 1055-56 (the New Mexico legislature made Section 41–11–1 the exclusive remedy for breach of Section 60-7A–16 by a licensee) (citing N.M.S.A., § 41-11-1(H)).

In 1985, the Legislature amended Section 41-11-1 to recognize a patron cause of action.[3] *Mendoza,* 2011-NMSC-030, ¶ 34, 258 P.3d at 1058 (citing N.M.S.A. 1978, § 41-11-1(B)).

Lastly, the Committee Commentary for the jury instruction addressing liquor licensee liability to a patron states that "[t]he legislature's definition of "licensee" evidences an intent to impose vicarious liability on an absent licensee for the acts and omissions of the licensee's agents and employees." N.M.R.A., Civ. UJI 13-1661, Committee Commentary.

Against this backdrop, it is clear to this Court that in enacting the Dram Shop Act, the Legislature was committed to holding those privileged with a liquor license, whether acting on their own or having others act on their behalf, subject to liability for injuries sustained as a result of selling or serving alcohol to an intoxicated person in violation of the Liquor Control Act. *See Mendoza,* 2011-NMSC-030, ¶ 24, 258 P.3d at 1056 (finding that Section 41-11-1 "applies to *licensees*") (emphasis in original); *Ashbaugh v. Williams*, 1987-NMSC-120, ¶ 5, 106 N.M. 598,

---

[3] Pursuant to Section 41-11-1(B), a patron who is served alcohol while intoxicated and injured as a result may obtain relief from the "licensee" who served him. *Mendoza,* 2011-NMSC-030, ¶ 34, 258 P.3d at 1058. (citing N.M.S.A. 1978, § 41-11-1(B)). The statutory patron cause of action requires proof beyond simple negligence; the claimant must show that the licensee "acted with gross negligence and reckless disregard for the safety" of the patron. *Id.*

599, 747 P.2d 244, 245 (it is contemplated that the person who seeks and is awarded the license be responsible and accountable for use of the license and liability of the person licensed must now be predicated upon the knowing acts of the licensee, or upon vicarious liability for the knowing acts of agents or servants whose work the licensee has the right to control) (citing N.M.S.A. 1978, §§ 60-3A-2.B. and 41.11.1(A)); *see generally id.* (observing that there is a rational basis for full liability of a licensee who might otherwise insulate himself or herself from accountability . . . ). It is also clear Section 41-11-1 does not preempt all common law claims by third-parties or patrons against non-licensees. *Mendoza,* 2011-NMSC-030, ¶¶ 4, 24, 36, 258 P.3d at 1052, 1057, 1059.

What is not clear is whether in the act of ensuring that the license holder cannot escape liability, the Legislature intended to allow other potential tortfeasors, such as bar managers, to do just that. Answering this question, in part, depends on the meaning of the Dram Shop Act's definition of licensee, which states that "a person licensed under the provisions of the Liquor Control Act and the agents or servants of the licensee." N.M.S.A. 1978, § 41-11-1(D)(1). As previously stated, Plaintiff argues that the plain meaning allows for separate causes of action against the person licensed *and* the agents or servants of the licensee. In contrast, Defendant Blazin Wings argues that the plain meaning *includes* the person licensed and its agents and servants, such that the acts and omissions of a licensee's agents and servants are subsumed in the licensee's vicarious liability. Thus, it is undisputed that whatever the "plain meaning" of licensee is goes to the heart of whether Defendants Morales and Matkin were fraudulently joined.

Initially, this Court was persuaded that agents and servants fell within the definition of licensee. However, case law within this district, although not binding, provides grounds for

11

doubt and lends support to Plaintiff's argument that the definition of licensee in the Dram Shop Act is ambiguous. *See Farrell v. Fox and Hound Restaurant Group*, USDC NM Civ. 08-388 WJ/WDS, 2009 WL 10696431, at *4 (Oct. 10, 2009) (unpublished) (explaining that the "express language of the § 41-1-1 limits the imposition of liability on the liquor license holder *or* on the *license holder's* agents or servants" and finding that a parent company was not an agent or affiliate of its subsidiary and that liability could not be imposed on that basis) (emphasis in original and added)); *see also Mendoza*, 2011-NMSC-030, ¶ 24, 258 P.3d at 1057 (finding that the plain language of Section 41-11-1 limits its reach to those individuals licensed pursuant to the Liquor Control Act and is not applicable to all individuals). Further, neither of the parties have cited, nor can this Court find, any New Mexico case law that directly addresses the specific issue of whether employees of licensees are eligible defendants in a dram shop action.[4] Additionally, even if not, it is not clear whether Defendants Morales and Matkin would nonetheless owe Plaintiff a statutory duty outside of the Dram Shop Act or a common law duty that would subject them to liability for their alleged gross negligence by failing to supervise the service of alcohol at Buffalo Wild Wings; allowing Mr. Kuehl to be left standing alone and unattended on the concrete walkway where he was highly susceptible to falling due to his extreme intoxication; and failing to take reasonable measures to ensure Mr. Kuehl's safety on the

---

[4] Instead, Plaintiff relies on the "plain meaning" of the Dram Shop Act's definition of "licensee"; the statutory framework of the Act and the broad application of the duty not to serve alcohol to an intoxicated person found in N.M.S.A. 1978, § 60-7A-16; cites New Mexico case law which allowed for common law causes of action outside of the Dram Shop Act and which explicitly explains that the Dram Shop Act did not create or abolish a cause of action but only narrowed the scope of liability for tavernkeepers; cites case law from other jurisdictions that have declined to insulate employees from civil dram shop liability; and argues various legal theories that allow for claims against both employees and employers. Doc. 8 at 9-18. Defendant Blazin Wings relies on its own "plain meaning" of the Dram Shop Act's definition of "licensee"; argues that the Dram Shop Act is the sole remedy for claims arising out of the sale and service of alcohol against licensees; argues policy considerations against allowing more eligible defendants; refutes certain of the case law Plaintiff cited; cites cases from other jurisdictions that have definitively ruled that their dram shop acts are the exclusive remedy against tavernkeepers; and argues that the Dram Shop Act superseded and absorbed the provisions of the Liquor Control Act. Doc. 13 at 4-14.

premises given his extreme intoxication.  Whether a duty exists is a question of law for the courts to decide.  *Herrera v. Quality Pontiac*, 2003-NMSC-018, *6, 73 P.3d 181, 186, 134 N.M. 43, 47-48 (citing *Schear v. Bd. of County Comm'rs*, 687 P.2d 728, 729, 101 N.M. 671, 672 (1984)) (citations omitted)).

"Under New Mexico law, Plaintiffs bear the burden of proving their negligence allegations by demonstrating the existence of a duty." *Henderson v. Nat'l R.R. Passenger Corp.*, 412 F. App'x 74, 84 (10th Cir. 2011).  To sustain a negligence action, "[i]t is axiomatic that a negligence action requires that there be a duty owed from the defendant to the plaintiff." *Paez v. Burlington N. Santa Fe Ry.*, 2015-NMCA-112, ¶ 9, 362 P.3d 116, 120. " 'Duty' is a requirement imposed by law to conform one's conduct to a certain 'standard of care.' "  In the absence of a legal duty, "there exists no general duty to protect others from harm." *Johnstone v. City of Albuquerque*, 2006-NMCA-119, ¶ 7, 140 N.M. 596, 600, 145 P.3d 76, 80.  "The first step in determining whether a duty exists in a particular case is to examine whether the legislature has spoken on the issue." *Chavez v. Desert Eagle Distrib. Co. of N.M.*, 2007-NMCA-018, ¶ 8, 141 N.M. 116, 119–20, 151 P.3d 77, 80–81, *overruled on other grounds by Rodriguez v. Del Sol Shopping Ctr. Assocs., L.P.*, 2014-NMSC-014, ¶ 8, 326 P.3d 465 (citations omitted); *Torres v. State,* 1995-NMSC-025, ¶ 10, 119 N.M. 609, 612, 894 P.2d 386, 389 ("With deference always to constitutional principles, it is the particular domain of the legislature, as the voice of the people, to make public policy.").  As especially relevant here, "[w]here the discussion of duty involves recognition of a new cause of action, or as here, extension of a recognized theory to a new setting, the issue is better framed as a question of policy." *Gabaldon v. Erisa Mortg. Co.*, 1997-NMCA-120, ¶ 21, 124 N.M. 296, 304, 949 P.2d 1193, 1201, *reversed on other grounds by Gabaldon v. Erisa Mortg. Co.*, 1999-NMSC-039, 128 N.M. 84, 990 P.2d 197.

In 2014, the New Mexico Supreme Court instructed courts that policy must be the only consideration when determining whether a defendant owes a plaintiff a duty to exercise reasonable care. *See Rodriguez*, 2014-NMSC-014, ¶ 1, 326 P.3d 465. "The existence of a duty is a question of policy to be determined by the court as a matter of law with reference to legal precedent, statutes, and other principles comprising the law." *Oakey, Estate of Lucero v. May Maple Pharmacy, Inc.*, 2017-NMCA-054, ¶ 22, 399 P.3d 939, 947 (citations omitted). *See Davis v. Bd. of Cty. Comm'rs of Dona Ana Cty.*, 1999-NMCA-110, ¶ 14, 127 N.M. 785, 790, 987 P.2d 1172, 1177 ("For guidance on questions of policy, we look to general legal propositions we may infer from legal precedent within our own state and from other jurisdictions, and we look as well to any relevant statutes, learned articles, or other reliable indicators of community moral norms and policy views[.]") (citations and internal quotations omitted).

As a federal court sitting in diversity the Court must apply the law of New Mexico's highest court, the New Mexico Supreme Court in determining what duty Defendants owed Plaintiff. *See Wade v. EMCASCO Ins. Co.*, 483 F.3d 657, 665–66 (10th Cir. 2007). When "no controlling state decision exists, the federal court must attempt to predict what the state's highest court would do." *Id.* A court may rely on "decisions rendered by lower courts in the relevant state, appellate decisions in other states with similar legal principles, district court decisions interpreting the law of the state in question, and the general weight and trend of authority in the relevant area of law." *Id.*

As previously stated, the Court has not found, nor have the parties cited, a New Mexico case directly on point that sheds light on the legislature's statutorily-imposed duty to not serve alcohol to intoxicated persons as it applies to non-licensees such a bar managers. Additionally, the meaning of "licensee" and its reference to agents and servers is arguably ambiguous. These

14

considerations, and because the legal standard when determining fraudulent joinder is one of certainty, persuade the Court that the determination of whether Defendants Morales and Matkin owed Plaintiff a duty of care as non-licensees to not serve alcohol to an intoxicated person or whether they owed Plaintiff a duty of care to ensure his safety on their premises given his level of intoxication is best left to the New Mexico state courts.

In light of the foregoing, the Court finds that Defendant Blazin Wings has failed to meet its burden of demonstrating that there is no possibility that Plaintiff could establish a cause of action against Defendants Morales and Matkin in state court.  The Court further finds that this determination should be left to New Mexico state courts, and not made in federal court.  *See Sakura v. Simplicity, Inc.,* USDC NM Civ. 10-1229 WPJ/KBM, 2011 WL 1935617, at *2 (April 7, 2011) (unpublished).

Because the Court finds that complete diversity of citizenship does not exist and jurisdiction cannot be sustained on this ground, the Court recommends that Plaintiff's Motion to Remand be **GRANTED.**

## V.  RECOMMENDATION

For all of the foregoing reasons, the Court finds that Defendant Blazin Wings has failed to carry its heavy burden of the presumption against removal because it has not conclusively demonstrated that Plaintiff has no possibility of establishing a cause of action against Defendants Morales and Matkin.  The Court, therefore, recommends that Plaintiff's Motion to Remand be **GRANTED.**  The Court further recommends that Plaintiff's Motion for Leave to Submit Reply in Support of Objections to Magistrate's Proposed Findings and Recommended Disposition be **DENIED AS MOOT**.

**THE PARTIES ARE NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1). **A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition. If no objections are filed, no appellate review will be allowed.**

_____
**JOHN F. ROBBENHAAR**
**United States Magistrate**